IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE MCVICKER, | ) | |
| | ) | CIVIL ACTION NO. 3:20-cv-140 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| GREGORY BRIGGS, *Warden, et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

### I. Background

This matter is before Magistrate Judge Maureen P. Kelly ("Judge Kelly") for proceedings in accordance with the Magistrates Act, 28 U.S.C. Section 636, and Local Civil Rule 72.

In July 2020, pro se Plaintiff Jamie McVicker ("McVicker") filed a Proposed Complaint against Defendants Gregory Briggs ("Briggs"), John Caron ("Caron"), Toni Maronowski ("Maronowski"), and Brian Pelesky ("Pelesky") (collectively, the "Defendants"), alleging that they violated his First, Eighth, and Fourteenth Amendment rights while he was a pretrial detainee and convicted inmate at Somerset's Municipal County Jail ("Somerset Jail"). (*See* ECF No. 6). In his complaint, McVicker sought relief under four separate counts. (*Id.*). On December 4, 2020, the Defendants filed a Motion to Dismiss McVicker's Complaint. (ECF No. 21).

Judge Kelly filed a Report and Recommendation on July 9, 2021, (ECF No. 36), recommending that the Court: (1) deny the Defendants' Motion to Dismiss with respect to Count I of McVicker's Complaint; (2) grant the Defendants' Motion to Dismiss with respect to Counts

II, III, and IV of McVicker's Complaint; (3) grant McVicker leave to amend his Complaint relative to Counts II and IV; and (4) deny McVicker leave to amend relative to Count III. (*Id.* at 20).

On September 28, 2021, the Court issued an Order dismissing Counts II, III, and IV of McVicker's Complaint with prejudice. (ECF No. 40 at 3). The Court dismissed Counts II and IV with prejudice because McVicker had informed the Court that he had chosen not to amend those counts. (*Id.* at 2). Finally, consistent with Judge Kelly's Recommendation, the Court denied the Defendants' Motion to Dismiss with respect to Count I. (*Id.* at 2–3). Accordingly, following this Court's September 28, 2021, Order, McVicker's lone remaining claim was the claim at Count I of his Complaint.

On January 30, 2022, McVicker submitted an Amended Complaint. (ECF No. 50). In that document, he added a Defendant—Dennis Vought ("Vought")[1], and he advanced a revised version of the claim at Count I of his initial Complaint. (*See id.*). At Count I, he contends that the Defendants were "deliberately indifferent to [his] health and safety by failing to protect him from infectious diseases relative to the" toilets at Somerset Jail. (ECF No. 111 at 10); *see also* (ECF No. 50 at 19–20).

On August 22, 2022, McVicker filed a Motion for Summary Judgment. (ECF No. 83). On October 31, 2022, the Defendants filed a Motion for Summary Judgment of their own. (ECF No. 87). On November 30, 2022, McVicker filed a "Motion for Sanctions to Strike the Record[.]" (ECF No. 97). Finally, on December 16, 2022, the Defendants filed a Motion to Strike. (ECF No. 102).

---

[1] Moving forward, when the Court refers to "the Defendants", the Court includes Vought in that group.

On February 8, 2023, Judge Kelly issued a Report and Recommendation, in which she recommended that the Court: (1) grant the Defendants' Motion for Summary Judgment at ECF No. 87; (2) deny McVicker's Motion for Summary Judgment at ECF No. 83; (3) deny McVicker's "Motion for Sanctions to Strike the Record" at ECF No. 97; and (4) deny the Defendants' Motion to Strike at ECF No. 102. (ECF No. 111 at 28). Regarding the Defendants' Motion for Summary Judgment, Judge Kelly noted that McVicker's "deliberate indifference claim in Count I arises out of two distinct periods of incarceration" at Somerset Jail. (*Id.* at 13). With respect to McVicker's first period of incarceration, Judge Kelly found that he had failed to exhaust his administrative remedies relative to his claim at Count I, and she recommended granting summary judgment in favor of the Defendants on that basis. (*Id.* at 14–21). With respect to McVicker's second period of incarceration, Judge Kelly found that he cannot establish an Eighth Amendment violation, and she recommended granting summary judgment in favor of the Defendants on that basis. (*Id.* at 21–24). Finally, Judge Kelly explained that the parties were "permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation[,]" and that the failure to "timely file objections will waive the right to appeal." (*Id.* at 28).

On April 3, 2023, McVicker filed a Motion for Reconsideration of Judge Kelly's recommendation regarding his "Motion for Sanctions to Strike the Record[.]" (ECF Nos. 116, 116-2). As the Court has previously explained, (ECF No. 118), it construes this Motion as Objections to the Report and Recommendation.

On May 11, 2023, McVicker submitted additional, timely Objections to the Report and Recommendation. (ECF No. 119).

On that same date, McVicker submitted a Motion for Leave to File a Second Amended Complaint. (ECF No. 120).

Finally, on May 30, 2023, the Defendants submitted a Response to McVicker's Objections to the Report and Recommendation. (ECF No. 121).

The Court finds that all of McVicker's Objections to the Report and Recommendation are meritless, and the Court denies his Motion for Leave to File a Second Amended Complaint. With those findings in place, the Court turns its attention to two of McVicker's Objections in particular. Because McVicker devotes a significant period of time to these two objections, and because the Court's findings regarding these objections warrant a brief explanation, the Court offers that explanation below. The Court then sets forth its reasons for denying McVicker's Motion for Leave to File an Amended Complaint.

## II. The Court Finds McVicker's Objections Meritless

### A. The First Objection That the Court Addresses

McVicker contends that, during his first period of incarceration at Somerset Jail, and specifically in April 2018, he spoke to Warden Briggs regarding issues with toilets in the facility. (ECF No. 119 at 9). According to McVicker, Briggs assured him that he would take care of McVicker's concerns. (*Id.* at 9–10). McVicker asserts that, at this point, he "believed he had taken the necessary step to informally exhaust his grievance … [and] had no further reason to initiate a formal grievance[.]" (*Id.* at 10). Therefore, McVicker argues that he exhausted his administrative remedies relative to his claim pertaining to his first period of incarceration. (*Id.* at 9–11).

The Court finds this objection unavailing for two reasons.

First, in his Amended Complaint, McVicker wrote that, "[i]n April 2018, [he] found that verbal communication with [Briggs] was useless after having a one on one meeting with him that had no [effect]." (ECF No. 50 at 9). In other words, McVicker's assertion in his Amended Complaint appears to directly contradict his assertion in his Objections regarding his interaction with Briggs. Further, in his Objections, McVicker refers to no record evidence supporting the notion that Briggs personally told him, in April 2018, that he would rectify the issue with the toilets. (ECF No. 119). Therefore, the Court has before it no evidence indicating that Briggs made such a statement to McVicker in April 2018.

Second, and relatedly, in exhausting Somerset Jail's grievance policy, an inmate must file a "formal written grievance": (1) after that inmate "has exhausted the informal resolution process and is not satisfied" and (2) "within 15 working days after the event upon which the claim is based." (ECF No. 111 at 16; ECF No. 120-2 at 3). Therefore, even if Briggs had told McVicker that the Somerset Jail would rectify the toilet issue,[2] and if that issue did in fact go unrectified (as McVicker contends), McVicker still had a responsibility to file a formal written grievance pursuant to Somerset Jail's grievance policy. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) ("The [Prison Litigation Reform Act ("PLRA")] requires proper exhaustion, meaning completing the administrative review process in accordance with the applicable procedural rules. These procedural rules are supplied by the individual prisons.") (internal quotation marks and citations omitted). Accordingly, because McVicker filed no such formal written grievance during

---

[2] Notably, McVicker offers no allegation that Briggs told McVicker that he had fully complied with Somerset Jail's grievance procedures by informally raising his grievances. (ECF No. 119).

his first period of incarceration, (ECF No. 111 at 16–17), he failed to exhaust his administrative remedies regarding his claim at Count I arising out of that incarceration.

B. **The Second Objection That the Court Addresses**

McVicker also contends that his failure to exhaust his administrative remedies during his first period of incarceration is excused pursuant to the Third Circuit's holding in *Shifflett v. Korszniak*, 934 F.3d 356 (3d Cir. 2019). (ECF No. 119 at 11–19). In that case, the Third Circuit held that "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." *Shifflett*, 934 F.3d at 365.[3]

Along these lines, McVicker asserts that Somerset Jail's grievance policy provides that "[s]taff who receive verbal or written concerns from an inmate are expected to attempt to resolve any-non frivolous concerns[.]" (ECF No. 119 at 16) (emphasis removed). Further, according to McVicker, he raised the issue regarding the toilets to several staff members at Somerset Jail by way of informal grievances during his first period of incarceration. (*Id.* at 11–19). And certain of the Defendants indicated in response to McVicker's Interrogatories that if "a toilet backed up in jail, [they] would personally respond by calling maintenance or a plumber." (*See, e.g., id.* at 14) (internal quotation marks and citation omitted). Yet, McVicker contends that Defendants did not take these steps in response to his informal grievances. (*Id.* at 11–19). Specifically, he states that

---

[3] Notably, with respect to this objection, McVicker's argument is that Somerset Jail failed to appropriately resolve the issue that he was grieving. (ECF No. 119 at 11–19). He does not contend that Somerset Jail failed to respond to one of his informal grievances within the timeframe set forth by its own policies. (*Id.*). Therefore, the case before this Court does not fall under the ambit of the Third Circuit's holding in *Shifflett*.

(1) he has invoices from a plumber that provided services to Somerset Jail from February 27, 2017, until March 31, 2021, and (2) those invoices do not indicate that that plumber was called to fix the toilets at the Somerset Jail during that timeframe because they were backing up with waste from a neighboring cell. (*Id.* at 14). He also asserts that the Defendants "did not notify maintenance either." (*Id.*). On this basis, McVicker argues that the prison officials did not comply with Somerset Jail's grievance policy and thereby made administrative remedies unavailable to him. (*Id.* at 11–19).

The Court finds this objection unavailing. Administrative remedies are unavailable to an inmate when those remedies operate "'as a simple dead end—with officers *unable or consistently unwilling* to provide any relief to aggrieved inmates[.]'" *Rinaldi v. United States*, 904 F.3d 257, 266–67 (3d Cir. 2018) (quoting *Ross v. Blake*, 578 U.S. 632, 642–44 (2016)) (emphasis added). However, the "onus falls on the inmate to show that [administrative] remedies were unavailable to him." *Id.* at 268.

Here, although McVicker has pointed to interrogatories indicating how officials at Somerset Jail said they *would have* potentially called maintenance regarding an issue with toilets at the facility, he has not pointed the Court to any record evidence, interrogatories or otherwise, indicating *that they did not* call maintenance regarding the issue with the toilets. (ECF No. 119). In other words, McVicker's assertion that no one at the prison called maintenance in response to his informal grievances is unsupported by record evidence. (*Id.*). Further, the Court notes McVicker's assertion that Briggs told an individual outside the prison, in June 2018, that the internal problems pertaining to plumbing had been or would be resolved. (ECF No. 111 at 18; ECF No. 119 at 10). To some degree, this allegation cuts against the notion that Briggs was unwilling or unable to

rectify the issues with the toilets. Finally, as Judge Kelly explained, there is record evidence that prison officials at Somerset Jail provided relief in response to McVicker's grievance about legal mail.[4] (ECF No. 111 at 20). Accordingly, the Court finds that McVicker has failed to show that the administrative remedies at Somerset Jail were unavailable to him, and the Court therefore finds that it is appropriate to grant summary judgment in favor of the Defendants with respect to McVicker's claims at Count I arising out of his first period of incarceration.

In short, after *de novo* review of the record in this matter, including the Report and Recommendation (ECF No. 111), and McVicker's Objections thereto (ECF Nos. 116, 119), the Court finds that all of his Objections are without merit. The Court will therefore grant summary judgment in favor of the Defendants. The Court will also adopt Judge Kelly's recommendations and deny: (1) McVicker's Motion for Summary Judgment at ECF No. 83, (2) his "Motion for Sanctions to Strike the Record" at ECF No. 97, and (3) the Defendant's Motion to Strike at ECF No. 102.

All of the foregoing leaves the Court with one final issue to consider: McVicker's request to file a Second Amended Complaint. (ECF No. 120).

---

[4] Along these lines, the Supreme Court's discussion of administrative remedies being unavailable because they operate as a dead end seems to involve situations where an entire administrative remedy process is all form and no substance—that is, it virtually *never* offers relief to complaining inmates. *Ross*, 578 U.S. at 643 (offering the following examples of such a system: (1) "Suppose ... that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions"; and (2) "So too if administrative officials have apparent authority, but decline *ever* to exercise it.") (emphasis added). In other words, the Court questions whether prison officials declining to afford substantive relief at one stage of a grievance process can suffice to show that that prison's administrative remedies are unavailable to the inmate seeking such relief. *Cf. Logan v. Wetzel*, No. 1:18-CV-2004, 2020 WL 1233639, at *5 (M.D. Pa. Mar. 13, 2020) (finding the inmate's claim of a "dead end grievance system" unavailing and noting that "'it is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.'") (quoting *Nyhuis v. Reno*, 204 F.3d 65, 77 (3d Cir. 2000)).

### III. The Court Denies McVicker's Motion for Leave to File a Second Amended Complaint

As the Court noted earlier, on May 11, 2023, McVicker submitted a Motion for Leave to File a Second Amended Complaint. (ECF No. 120). In that document, McVicker states that he wishes to cure deficiencies in his Amended Complaint by "describing the egregiousness of the condition of confinement with the sanitation by identifying: (1) how often it exactly occurred during his first incarceration, (2) the plaintiff's inability to move freely away from the sanitation problem, and (3) the fact that [he] had to sleep and wake up everyday beside" raw sewage from other inmates. (*Id.* at 1).

A motion for leave to amend a complaint is "addressed to the sound discretion of the district court." *Cureton v. NCAA*, 252 F.3d 267, 272 (3d Cir. 2001). A district court "may deny leave to amend a complaint if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." *Id.* at 273 (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

While delay alone is an insufficient ground to deny leave to amend, "'at some point, the delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party.'" *Id.* (quoting *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)). Delay may "become undue when a movant has had previous opportunities to amend a complaint." *Id.* And when a "party delays making a motion to amend until after summary judgment has been granted to the adverse party ... courts have recognized that the interests in judicial economy and finality of litigation may become particularly compelling." *Id.*

Further, "substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend." *Id.* The "issue of prejudice requires that [courts] focus on the hardship to the defendants if amendment were permitted." *Id.* Specifically, the Third Circuit has considered whether "allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Id.*

For two reasons, the Court finds that it is appropriate to deny McVicker's Motion for Leave to File a Second Amended Complaint.

First, with respect to McVicker's delay in seeking leave to amend, the Court finds that it is undue because: (1) he has previously filed two complaints in this matter, (ECF Nos. 6, 50), and (2) he waited until after Judge Kelly recommended granting summary judgment in favor of the Defendants to request leave to amend. (ECF Nos. 111, 120). Further, Judge Kelly has already written an extensive Report and Recommendation fully addressing McVicker's claims. (ECF No. 111). The Court is hesitant to strain judicial resources by requiring her to again consider McVicker's claims.

Second, the Court finds that permitting McVicker leave to amend would prejudice the Defendants at this point in this litigation because: (1) the Court has already afforded McVicker the opportunity to conduct discovery, (ECF No. 54), and (2) granting him further leave to amend and raise new factual allegations would require the Court to permit him to seek additional discovery from the Defendants regarding those allegations. The Defendants would then, in turn, have to defend against the new theories purportedly raised by such discovery.

Therefore, for all of these reasons, the Court finds that it is appropriate to deny McVicker's Motion for Leave to File a Second Amended Complaint. (ECF No. 120).

Accordingly, the following Order is entered:

AND NOW, this 31st day of May, 2023, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment at ECF No. 83 is **DENIED** for the reasons stated in the Report and Recommendation at ECF No. 111 and those in the Memorandum Order above.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Summary Judgment at ECF No. 87 is **GRANTED** for the reasons stated in the Report and Recommendation at ECF No. 111 and those in the Memorandum Order above.

**IT IS FURTHER ORDERED** that the Plaintiff's "Motion for Sanctions to Strike the Record" at ECF No. 97 is **DENIED** for the reasons stated in the Report and Recommendation at ECF No. 111 and those in the Memorandum Order above.

**IT IS FURTHER ORDERED** that the Defendants' Motion to Strike at ECF No. 102 is **DENIED** for the reasons stated in the Report and Recommendation at ECF No. 111 and those in the Memorandum Order above.

**IT IS FURTHER ORDERED** that the Report and Recommendation at ECF No. 111 is adopted as the opinion of the Court for its reasoning and conclusions.

**IT IS FURTHER ORDERED** that, insofar as the Court has construed the Motion at ECF No. 116 as Objections to the Report and Recommendation and found those objections meritless, the Motion at ECF No. 116 is **DENIED** for the reasons stated above.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Leave to File a Second Amended Complaint at ECF No. 120 is **DENIED** for the reasons stated above. The Court shall docket a separate Order entering Judgment in favor of the Defendants. The Clerk shall then terminate the Defendants from this case and mark the case closed.

BY THE COURT:

*Kim R. Gibson*

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**

**Notice by U.S. Mail to:**
Jamie McVicker
NM-1576
SCI Houtzdale
209 Institution Drive
Houtzdale, PA 16698-1000